## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MELISSA GREENSTEIN, on behalf of herself and all other persons similarly situated, | ) ) ) | |
| | ) | **Case No. 11-cv-2399 RDR/KGS** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MEREDITH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

---

### PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The case was litigated for over two years. It involved novel legal issues, lengthy and voluminous discovery and contested motions. The settlement resolves the claims of the 38 opt in plaintiffs for a total of $800,000. It results in an average gross recovery of $21,052.63 per individual, with individual net recovery amounts of up to $52,529.40 depending on the amount of eligible weeks worked.

### I.        Facts and Procedural History

Plaintiff brought this lawsuit for alleged violation of the Fair Labor Standards Act (hereinafter "the Litigation") on July 18, 2011. Plaintiff sought relief on behalf of a putative class consisting of producers who worked for Meredith Corporation, who were allegedly misclassified as exempt from overtime pay. On April 23, 2013, this Court conditionally certified a collective action and ordered that notice of the opportunity to join the litigation be given. As a result of the Court-approved notice, 38 individuals consented to join the litigation.

After the exchange and analysis of extensive discovery consisting of depositions and over 70,000 pages of documents, including tens of thousands of pages of email correspondence, work and pay schedules, and worker information, the parties successfully reached a settlement after a second mediation of the case with a respected third party neutral, Larry Rute, on August 23, 2013 and after another six weeks of reaching a final written settlement agreement.

Plaintiffs and Plaintiffs' counsel believe the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted. Defendant denies these claims, yet wishes to avoid the uncertainty and risk attendant with litigation. Plaintiffs and Plaintiffs' counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation through trial and appeal.  They have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this action, and believe that the settlement set forth in the Stipulation confers substantial benefits upon the class members.

The main terms of the agreement are as follows:

- A gross settlement fund of $800,000 will be established to settle the claims of all 38 opt in plaintiffs.

- Class Members receive a pro rata portion of the settlement based on the number of work weeks within three years from the date of his or her consent to join the litigation through the date of Meredith's re-classification decision. Weeks worked as "exempt" news producers will be credited at 100%. Weeks worked as "non-exempt" news or other producers (weeks where the individual was eligible to receive overtime) will be credited at 5% to account for the fact that they were eligible for and received overtime pay. Weeks worked as "executive" news producers will be credited at 5% to account for the fact that such claims are significantly weaker than the claims of the non-executive producers, based on the significant likelihood of their exempt status.

- All class members will release all wage and hour claims during the class period in return for receiving payment from this fund.

- Plaintiffs request expenses of $9,813.25 plus attorneys' fees of $263,395.58 (one third of the gross settlement fund, after the deduction of expenses).

- Plaintiffs request service awards in the total of $10,000 to be divided among the Named Plaintiff and four additional class members who provided valuable information and support, and who joined this litigation at its inception and early in the prosecution of the matter.

The settlement agreement is attached as Exhibit 1.

## II. Question Presented

Should the Court grant Plaintiffs' unopposed motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends heavily-contested litigation prior to trial?

## III. Argument

### A. Approval of the settlement is warranted.

An FLSA collective action is not a class action – individuals participating affirmatively choose to be bound and represented by counsel and there are no absent class members whose claims are being settled. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288 (6th Cir. 1951). Thus, the due process concerns that mandate a high level of judicial scrutiny of class action litigation are not present in FLSA actions, because absent class members are not bound by the case's outcome. *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977).

Nonetheless, many district courts have held that settlement of an FLSA collective action generally requires court approval because private settlements will not effectuate a valid release for the employer. *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)); *see also Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, wage claims under the FLSA are typically settled or compromised in one of two ways. First, under 29 U.S.C. § 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second, under a

{249653.DOCX }

private FLSA enforcement action, district courts may approve settlements resulting from contested litigation over a *bona fide* dispute between the parties. *Lynn's Food Stores*, 679 F.2d at 1353. When the latter option is proposed, as here, the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

The Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should readily approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

This Court, as well as other courts in neighboring federal districts, routinely approve similar settlements reached in FLSA collective actions. *See, e.g.*, *West v. First Franklin,* Order Approving FLSA Settlement, Case No. 06-2064 (D. Kan. July 31, 2007); *Archer v. Nat'l Bank of Kansas City*, Order Approving Settlements, Case No. 05-2382-KHV (D. Kan. Feb. 15, 2006); *Brown v. Ameri-National Corp.*, Order Approving Settlements, Case No. 04-2510-CM (D. Kan. Jan. 3, 2006); *Carson v. Bank of Blue Valley, Inc.*, Order, Case No. 04-CV-02507-CM (D. Kan. May 2, 2006); *Carson v. Bank of Blue Valley, Inc.*, Order, Case No. 04-CV-02507-CM (D. Kan. Feb. 23, 2006); *Sohn v. Premier Bank*, Order Approving Settlement, Case No. 06-CV-02121-CM (D. Kan. July 18, 2006); *Niday v. SCK Fin'l. Corp.,* Order Approving Settlements, Case No. 06-CV-2219-CM (D. Kan. March 14, 2007). Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

The settlement was reached only after heavily-contested litigation, and after two separate mediation sessions, facilitated by Larry Rute, who is recognized as a top mediator for employment disputes in the region. After nearly twelve hours of negotiations during a second mediation the parties were able to reach an accord. There was no collusion between the parties.

Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt. Plaintiffs claimed that Defendant failed to pay them overtime compensation for work performed in excess of 40 hours in a workweek. The Defendant claimed that Plaintiffs were exempt from the overtime requirements of the Act, and asserted other defenses. The parties also disputed the appropriate rate of pay and whether the fluctuating workweek method of pay was applicable. The parties presented this issue to the Court via a request for summary judgment. Ultimately, the Court chose to deny the motion and leave the issue for trial.

The settlement offers a significant payment to the Plaintiffs now. Class members will receive awards of up to $52,529.40 after costs and attorneys' fees depending on the number of weeks

worked in eligible jobs. In fact, by virtue of this settlement, many participants will receive a large portion of their annual income. Given the financial terms of this settlement, it is highly unlikely that the recovery of any settlement would increase as a result of protracted litigation and trial. Further, any such compensation may not occur until after years of litigation and appeals. Or, such compensation may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."). *See also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").

Accordingly, Plaintiffs respectfully request that this Court approve the settlement and order that the Plaintiffs are paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval is attached as Exhibit A to the Settlement Agreement (Exhibit 1).

## IV. The Court Should Approve the Requested Service Awards

Plaintiffs seek a modest service payment for those that provided invaluable service to the group, approximating 1% of the total settlement fund. Plaintiffs seek Court approval for $4,000.00 to be paid to the Named Plaintiff, Melissa Greenstein, and $3,000.00 for Morgan Smith, who opted into the matter at its inception. Additionally, Plaintiff seeks $1,000.00 each for Kellee Divine, Daniel English, and John Gilmore, who chose to join the lawsuit shortly after its inception, and who provided supporting evidence related to their claims. These persons worked with Plaintiffs' Counsel throughout this litigation in pursuing these claims on behalf of class members and provided the

necessary evidence for the Court, including sworn statements, to certify the matter collectively.

The enhanced payments reward those individuals for their service to the class as a whole. Without these 5 individuals' assistance, it is unlikely that any recovery would have been as beneficial to the group. This Court has recognized that the time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (awarding $5,000 service award to each of four class representatives); *see also Cimarron Pipeline Constr., Inc. v. National Council on Compensation Ins.*, 1993 WL 355466 (W.D. Okla. 1993) (awarding $10,000 service award to each of three class representatives); *Kamp v. The Progressive Corp.*, 2004 WL 2149079 (E.D. La. 2004)) (approving up to $10,000 in service awards to class representative and other plaintiffs). Accordingly, Plaintiffs seek a modest service payment as a reward for their contributions to the case.

## V.  Plaintiffs' Application for Fees & Expenses Should be Approved

As part of the settlement, Plaintiffs request one-third of the Settlement Fund for payment as attorneys' fees, plus expenses of $9,813.25. Such fees are reasonable, given the settlement value, as well as the time spent, risk taken, and the experience of Plaintiffs' counsel.

### A.  Legal Standard.

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." See, e.g. *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 593 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)). For purposes of attorney's fees, plaintiff is considered a "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit. *Jackson v. Austin*, 267 F. Supp.2d 1059, 1063 (D. Kan. 2003). Though the court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. *Wright v. U-Let-Us Skycap Serv., Inc.*, 648 F. Supp. 1216, 1218 (D. Colo. 1986).

{249653.DOCX }

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Local Rule 54.2 in the District of Kansas also encourages the parties to reach an agreement regarding the payment of fees in cases involving statutory fee shifting. *See* D. Kan. Local Rule 54.2 (a) and (d) (requiring parties to consult and try and resolve fee request before bringing the matter to the Court). Defendant has agreed not to contest Plaintiffs' request for one-third of the Settlement Fund as attorneys' fees and to reimburse Plaintiffs' counsels' out-of-pocket costs and expenses from the Settlement Fund.

The Tenth Circuit has joined most other Circuits in expressing "a preference for the percentage of the fund method" in class actions where a settlement results the creation of a common fund. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Rosenbaum v. MacAllister*, 64 F.3d at 1439 1445 (10th Cir. 1995); *see also In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1269 (D. Kan. 2006) ("The preferred method in common fund cases is the percentage of the fund analysis."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting the percent of common fund approach preferred method in FLSA collective action matter

and critiquing lodestar approach used by district court for paying fees).

Here, the agreed upon attorneys' fees constitute one-third of the settlement fund. This Court has awarded a fee in this range on multiple occasions, and is presumptively reasonable. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011) ("The Court also notes that an award of one-third of the fund falls within the range of awards deemed reasonable by courts."); *Williams v. Sprint/United Mgmt. Co.*, CIV. 03-2200-JWL, 2007 WL 2694029 (D. Kan. Sept. 11, 2007) (approving 35% in ADEA collective action); *West, et al. v. First Franklin Financial Corp.*, Order Approving FLSA Collective Action Settlement, Case No. 2:06-CV-02064-KHV-JPO (D.Kan. July 31, 2007) (awarding class counsel attorneys' fees and costs in the amount of thirty percent (30%) of the FLSA Settlement Fund); *Horn, et al. v. Principal Financial Group, Inc. and Principal Residential Mortgage, Inc.*, Order Approving Settlements, Case No. 2:05-cv-2032-KHV (D. Kan. December 2, 2005) (awarding counsel thirty percent (30%) of settlement fund made available to eligible plaintiffs). Other federal courts outside of this district do as well. *E.g., Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D.Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. September 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. January 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

The requested percentage of the fund is less than class counsel's actual lodestar in the case. Class counsel's combined lodestar in the case as of October 16, 2013 is $280,862.00. *See* Williams Declaration (Exhibit 2); Hodgson Declaration (Exhibit 4).[1]  And counsel continues to work on the settlement administration process. As such, counsel's lodestar will continue to grow as the settlement in the case proceeds.

Finally, the District of Kansas has analyzed some or all of the factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors") in evaluating the reasonableness of a fee request. *See e.g., Bruner,* 2009 WL 2058762, at *4.  Each of the *Johnson* factors supports the reasonableness of Plaintiffs' counsel's requested fees.

### 1.    The Time and Labor Required.

Unquestionably, this case was hard fought, complex and lengthy.  Through the date of this filing, Plaintiffs' counsel have spent a significant amount of time prosecuting the case (even excluding time removed in the exercise of billing judgment).  Work on this case is far from done, and many hours will be spent on administering payment of the settlement to the class. This factor alone supports Plaintiffs' application.  Plaintiffs' Counsel prosecuted this matter for more than two years. During this period, tens of thousands of documents were produced, dozens of pleadings researched, drafted and successfully argued -- all this in addition to the case and client management work in which Plaintiffs' counsel engaged. Moreover, two mediations and multiple informal negotiations were necessary for the parties to even reach an accord in the first place.

There are many more hours of work to be performed by Counsel in this case including the payment administration, questions to answer, legal advice to be given, and attendant case management.  Payments will be sent to those who consented to join this matter.  And Counsel will communicate with each of these individuals prior to doing so. Plaintiffs' Counsel will also have to

---

[1]    Plaintiffs' will provide their detailed time records *in camera* if the Court so requests.

continue work with the Defendant and its attorneys to process and effectuate this settlement.  This is Plaintiffs' Counsel's only opportunity to be paid for these future services.  Plaintiffs' Counsel cannot come back again and ask for more fees for this future work.[2]

### 2.       The Novelty and Difficulty of the Questions.

As the Court is aware, this litigation involved novel and difficult legal issues, including questions regarding the application of the fluctuating workweek and whether news producers are exempt or non-exempt workers. As the Court observed, the fluctuating workweek issue is complex, with cases deciding the issue in favor of both Plaintiffs and Defendants throughout the country. Perhaps aptly, this Court left the issue to be resolved at trial.

### 3.       The Skill Requisite to Perform the Legal Service Properly.

Large scale wage and hour cases are complicated and time-consuming matters.  Only a limited number of firms in the Kansas City area (or even in the mid-west) litigate these types of claims. Plaintiffs' Counsel, Michael Williams and Eric Dirks of Williams Dirks LLC and Michael Hodgson of The Hodgson Law Firm, L.L.C., have significant experience as employment attorneys. Eric Dirks is one of the only attorneys in the Kansas City area to have successfully tried a wage and hour class action and has been prosecuting wage and hour class actions for most of his career. Eric Dirks is AV rated by Martindale Hubbell and has prosecuted numerous wage and hour cases nationwide during his career. Mr. Williams spent twelve years defending employers in wage and

---

[2] In common fund cases it is appropriate to give *less* weight to the "time required" factor, particularly in comparison to the quality of the settlement delivered by class Counsel – the "results obtained" factor. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, (1992); *Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1104 (D.N.M. 1999) ("In the contingency fee context the marketplace would value the services by the results obtained, not by the hours required to achieve them. Therefore, the lodestar analysis . . . either as the primary means of setting the award or as a check on the reasonableness of a proposed percentage-would not provide an accurate gauge by which to judge the award.").  "While time is a factor, it should be stressed that it is only of relative importance." *Blank v. Talley Indus., Inc.* 390 F. Supp. 1, 5 (S.D.N.Y. 1975) (awarding fees under lodestar approach).

hour cases and other employment matters as an associate and a partner at a well-respected firm. Mr. Williams's expertise and ability is reflected by the numerous awards and peer recognition over the years including: Congenial Counselor, Best of the Bar, Distinguished Recent Graduate by the MU Law School, and Young Lawyer of the Year.  Mr. Hodgson has dedicated most of his career prosecuting wage and hour violations under the FLSA and state and common law. Previously, Mr. Hodgson worked at a firm dedicated to prosecuting wage violations in the Kansas City area. In 2013, Mr. Hodgson, based on the accomplishments of his career to date, was selected as a Super Lawyers Rising Star for practice in labor and employment law.

More information about Plaintiffs' counsels' skill and experience is submitted by way of declarations. *See* Exhibits 2-5. As the declarations reveal, Plaintiffs' counsel are among the most experienced and effective wage and hour and employment litigators in the Kansas City area.

> ### 4. The Preclusion of Employment by the Attorney Due to The Acceptance of the Case.

Attorney Michael Hodgson is the only attorney employed by The Hodgson Law Firm, L.L.C. Attorneys Michael Williams and Eric Dirks are the only full-time attorneys employed by Williams Dirks, LLC. The volume of the time committed to this case over its life-span necessarily resulted in the preclusion of other employment opportunities by Plaintiffs' counsel.  There is no doubt that Plaintiffs' counsel experienced the loss of significant other case opportunities.

> ### 5. The Customary Fee.

The customary fee in these types of cases is a fee contingent upon a successful outcome. *See Ramah Navajo Chapter*, 50 F.Supp.2d at 1104.  In prosecuting its labor and employment matters, Williams Dirks, LLC., and The Hodgson Law Firm, L.L.C. enter into contingent fee agreements providing for a percentage of the recovery (usually between 35%-40%).  This is due to the fact that the individuals represented are not able to pay any attorney fees, expenses, or costs.  In turn, Counsel fronts all out of pocket expenses in litigation.  The Plaintiffs in this case entered into

contingent fee agreements with Counsels' firms in the amount of 40% of a common fund, if any, obtained by settlement. Plaintiffs, therefore, are receiving a discount to the amount they agreed to pay.

Moreover, the hourly rates used for Plaintiffs' counsels' lodestar number also closely track the customary fees. Indeed, this Court recently awarded the exact hourly rate to Plaintiff's counsel, Eric Dirks, in a highly-contested fee dispute. *See Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561 (awarding rate of $400 to Eric Dirks in contested fee dispute in this District). *See also, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, MDL 1770, November 2, 2010 (N.D. Cal.) (performing lodestar crosscheck at $500 per hour for Eric Dirks); *Raikos v. JPMorgan Chase & Co.,* 08-CV-01274 (S.D.N.Y.) (same); Exhibits 2 and 5 (noting Plaintiffs' counsels' rates are at or below a customarily reasonable range for this type of litigation).

### 6. Whether the Fee is Fixed or Contingent.

It is well-recognized that contingency representation ought to be compensated at a higher rate, and is appropriately considered when assessing the hourly rates of Plaintiffs' counsel. *See, e.g., Burlington v. Dague,* 505 U.S. 557, 562 (1992) (noting the contingency basis of the representation is "already subsumed in the lodestar"); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 569, 574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking).

### 7. Time Limitations Imposed by the Client or the Circumstances.

This case did not involve any artificially compressed time periods, but it did involve a large time commitment over the past two years.

### 8. The Amount Involved and the Results Obtained.

The settlement represents an excellent outcome for the class members. The Gross

Settlement Amount is substantial at $800,000.00.  The average gross recovery is $21,052.63 .And the release is limited in scope. Only wage and hour claims that could have been or were actually asserted in this litigation will be released.  The narrow nature of the release exemplifies the results achieved for the FLSA collective class.  *See Ramah Navajo Chapter*, 50 F.Supp.2d at 1103-04 (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

### 9. The Experience, Reputation, and Ability of the Attorneys.

As discussed above in detail, Plaintiffs' counsel are skilled, experienced and enjoy strong reputations in Kansas City. *See* Exhibits 2-5. This factor supports Plaintiffs' application.

### 10. The "Undesirability" of the Case.

There are few firms that would have taken this case on a contingency basis without pay for over two years of representation. Further, Defendant was represented by highly capable defense counsel with the resources to vigorously defend the case.

### 11. The Nature and Length of the Professional Relationship With the Client.

Plaintiffs' counsel have worked closely with the class representatives and many of the opt-in clients for over two years. Plaintiffs' counsel have met with their clients on numerous occasions and have communicated on a frequent basis with many of them during active times of the case.

### 12. Awards in Similar Cases.

As noted above, fees constituting one-third of the settlement fund are routinely awarded. Counsel have obtained an excellent result for the Plaintiffs. Counsel's requested fee constitutes one-third of the fund and is reasonable based on that benchmark alone. Nor is counsels' requested fee a windfall – it is less than their actual lodestar in the case. As a result, this Court should readily approve Plaintiffs' requested attorneys' fees of $263,395.58 and expenses of $9,813.25.

## CONCLUSION

The settlement presented is an immediate, very real, very substantial, and excellent settlement. Plaintiffs, therefore, respectfully request that the Court approve the settlement in whole and order that payment is issued to the opt in Plaintiffs, without delay. The Court should also approve the service awards requested totaling $10,000. Finally, the Court should award the requested fees constituting one-third of the common fund and expenses.

Respectfully submitted,

**WILLIAMS DIRKS LLC**

/s/Eric L. Dirks
Eric L Dirks    D. Kan. Bar No. 77996
Michael A. Williams   KS Bar No. 19124
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.comm
dirks@williamsdirks.com
(o) 816-876-2600
(f)  816-221-8763


Michael Hodgson  KS Bar No. 21331
**The Hodgson Law Firm, L.L.C.**
6 NW Main Street
Lee's Summit, MO 64063
mike@thehodgsonlawfirm.com
(913) 890-3529

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2013, I served the foregoing by U.S. mail, postage prepaid, to:

Bernard Rhodes
Brian Woolley
Bridget Romero
**LATHROP & GAGE LLP**
2345 Grand Blvd., Ste. 2400
Kansas City, MO 64108
(o) 816-460-5508
(f) 816-292-2001

Attorneys for Defendant

/s/Eric L. Dirks
Eric L. Dirks